O

JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| CHUNG HOU HSIAO,<br><br>     **Plaintiff,**<br><br>  **vs.**<br><br>**MARK J. HAZUDA, Director, United States Citizenship and Immigration Services Nebraska Service Center, et al.,**<br><br>     **Defendants.** | **Case No.: SACV 14-0728 DOC (DFMx)**<br><br>**ORDER**<br>**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [24]**<br>**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [25]** |

Before the Court are Defendants' Motion for Summary Judgment ("Defs.' Mot.") (Dkt. 24) and Plaintiff's Motion for Summary Judgment ("Pl.'s Mot.") (Dkt. 25).

## I. Background

Plaintiff Chung Hou Hsiao seeks review under the Administrative Procedure Act ("APA") of the United States Citizenship and Immigration Services's ("USCIS's") decision to deny his I-485 applications for adjustment to lawful permanent resident status. The key issue in this case is whether his 1998 and 2000 I-140 petitions for an employment-based visa were "approvable when filed" such that Mr. Hsiao's I-485 applications should have been approved.

### A. Relevant Immigration Law and Regulations

#### 1. Adjustment of Status

Certain non-citizens, or "aliens" as the term is used in the Immigration and Nationality Act ("INA"), are eligible to adjust their status to that of an alien lawfully admitted for permanent

residence from within the United States, rather than having to return to be processed through the American consulate in their country of origin.[1] 8 U.S.C. § 1255(a). Certain individuals are categorically *in*eligible to apply for adjustment of status, including those who are not in a lawful immigration status at the time that they submit their I-485 application and those who have previously worked without employment authorization. *See* 8 U.S.C. § 1255(c). However, a person can adjust to lawful permanent resident status despite having been unlawfully present or having worked without authorization if he or she is "grandfathered" in under 8 U.S.C. § 1255(i). A person can be "grandfathered" in under 8 U.S.C. § 1255(i) if he or she pays a $1,000 fee and can establish that he or she is the beneficiary of a qualifying immigration petition or labor certification application filed on or before April 30, 2001. *See* 8 U.S.C § 1255(i).

USCIS's regulations provide that, for a visa petition to be a qualifying petition for § 1255(i) purposes, the petition must have been "approvable when filed." 8 C.F.R. § 245.10(a)(1)(i). "Approvable when filed," in turn, means that the petition was (1) properly filed, (2) meritorious in fact, and (3) non-frivolous ("frivolous" meaning patently without substance). 8 C.F.R. § 245.10(a)(3). The regulation provides that

> [t]his determination will be made based on the circumstances that existed at the time the qualifying petition or application was filed. A visa petition that was properly filed on or before April 30, 2001, and was approvable when filed, but was later withdrawn, denied, or revoked due to circumstances that have arisen after the time of filing, will preserve the alien beneficiary's grandfathered status if the alien is otherwise eligible to file an application for adjustment of status under section 245(i) of the Act.

*Id.* The regulation further defines "circumstances that have arisen after the time of filing" as circumstances similar to certain examples provided in 8 C.F.R. §§ 205.1(a)(3)(i) and (ii). Case law interpreting the "approvable when filed" standard is discussed in more detail *infra*.

---

[1] To be eligible, the individual must (1) submit an I-485 application for adjustment of status, (2) be eligible to receive an immigrant visa and be admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed. 8 U.S.C. § 1255(a).

## 2. Employment-Based Visas

The United States immigration system primarily allocates immigrant visas—that is, visas leading to lawful permanent resident status—based on an individual's family relationship to a U.S. citizen or lawful permanent resident or based on an individual's employment. Employment-based visas are available to several categories of individuals. Relevant to this case are the first preference "aliens of extraordinary ability" ("EB-1") and second preference "aliens who are members of the professions holding advanced degrees or aliens of exceptional ability" ("EB-2") categories. *See* 8 U.S.C. § 1153(b)(1), (2).

Typically, to obtain an employment-based visa, the individual must have a job offer and the individual is dependent on his or her employer to initiate the visa application process. The application process usually involves (1) the individual's employer filing a labor certification application with the U.S. Department of Labor (DOL); (2) the employer filing an I-140 petition with USCIS to determine the individual's eligibility for one of the EB categories; and, finally, (3) the individual filing an I-485 application with USCIS to adjust his or her status to lawful permanent resident. *See* 8 U.S.C. §§ 1182(a)(5), 1154(a)(1)(F), 1255(a); 8 C.F.R. §§ 204.5(c), (l)(1), 245.1; 20 C.F.R. § 656.10(c). The purpose of the labor certification process is for the DOL to certify that there are not sufficient U.S. workers able, willing, qualified, and available in the geographic area for the job being offered to the individual. *See* 8 U.S.C. § 1182(a)(5)(A)(i); 20 C.F.R. § 656.24(b).

Individuals eligible for EB-1 classification do not need a job offer, can bypass the often time-consuming labor certification process, and can self-petition on Form I-140. *Kazarian v. U.S. Citizenship & Immigration Servs.*, 596 F.3d 1115, 1120 (9th Cir. 2010). Individuals eligible for EB-2 classification can do the same if USCIS, in its discretion, determines that waiving the job offer and labor certification requirements would be "in the national interest." 8 U.S.C. § 1153(b)(2)(B)(i); 8 C.F.R. § 204.5(k). Under *Matter of New York State Dep't of Transp.*, 22 I.&N. Dec. 215 (BIA 1998), the person seeking the national interest waiver has the burden to establish that: (1) he seeks employment in an area of substantial intrinsic merit; (2) the proposed benefit will be national in scope; and (3) he will serve the national interest to a substantially

greater degree than an available U.S. worker with the same minimum qualifications. *Id.* at 217-18.

### B. Facts

Mr. Hsiao was born in Taiwan and is a citizen of Taiwan. Certified Administrative Record ("CAR") at 862, 867. He came to the United States in 1993 on an F-1 student visa to study electrical engineering. He obtained his master's degree in electrical engineering from Farleigh Dickinson University in New Jersey in February 1995. CAR at 927, 998, 1001.

### 1. I-140 Petitions

### a. First I-140 Petition in 1998

On July 6, 1998, Mr. Hsiao filed his first I-140 petition with the former Immigration and Naturalization Service ("INS"). In his first I-140 Petition, Mr. Hsiao sought classification under EB-2 as a "foreign national who is an advanced degree professional with an exceptional ability in Electrical and Computational Engineering" and a national interest waiver. CAR at 962. USCIS issued a request for additional evidence ("RFE") on November 16, 1999. CAR at 943-944. Mr. Hsiao responded with additional evidence. However, INS ultimately denied the application on May 7, 1999, explaining,

> The record originally included evidence to establish that the beneficiary is a competent researcher. The record included numerous letters of recommendations of the beneficiary's qualifications, achievements, publications by the beneficiary, and the beneficiary's school records.
>
> On November 16, 1998, you were requested to submit evidence that the area of intended employment is of substantial intrinsic merit, will benefit the nation as a whole and that it would be contrary to the national interest to potentially deprive the prospective employer of the services of the alien by making the position available to the U.S. worker.
>
> In response, you have submitted to [sic] additional letters of recommendation for the beneficiary. The record does not contain evidence to establish that the waiver of the job offer would be in the national interest. The record establishes that the qualifications and the job would be easily articulated on a labor certification and job offer.

CAR at 941-942. Mr. Hsiao did not challenge INS's decision at the time.

### b. Second I-140 Petition in 2000

On July 11, 2000, Mr. Hsiao filed a second I-140 petition with INS, this time seeking classification as an EB-1 "alien of extraordinary ability." INS issued a request for evidence on November 8, 2000, CAR at 845-846, to which Mr. Hsiao responded with additional evidence. INS ultimately denied the application on May 8, 2001, explaining,

> It appears that the beneficiary is a talented researcher. However, the evidence submitted does not establish that the beneficiary is one of the small percentage who have risen to the very top of the field.
>
> The beneficiary's patents are noted. He appears to have been awarded at least two patents for technical processes. However, the significance of these patents has not been demonstrated. It is not clear whether the scientific community considers them to be of high importance.
>
> The beneficiary's receipt of the Longteng Prize for the best scientific technology design is noted. However, the significance of this prize is not clear. There is no indication of the size of the pool of candidates considered for the prize, or what criterion was used to determine the winner. There is no indication whether the greater scientific community considers this prize to be a sign of excellence.
>
> The beneficiary's membership in IEEE and ACM is noted. However, these organizations are very large and do not appear to require outstanding achievements of their members.
>
> In summary, while the beneficiary appears to be a competent scientist and researcher, it does not appear that he has reached the very top of his field, or that he has garnered sustained national or international acclaim.

CAR at 797. Mr. Hsiao did not challenge INS's decision at the time.

### c. Third I-140 Petition in 2012

On February 13, 2012, Mr. Hsiao filed a third I-140 petition with USCIS once again seeking EB-2 classification with a national interest waiver, although this time in the field of solar technology. CAR at 452. USCIS approved this petition on August 24, 2012. CAR at 405.

## 2. I-485 Applications

On November 1, 2012, with EB-2 classification finally in hand, Mr. Hsiao filed an I-485 application for adjustment to lawful permanent resident status. CAR at 393-444. Because he had been present in the United States without lawful status since August 2001 and because he had worked without authorization, he claimed eligibility to adjust status under the "grandfathering" provision, 8 U.S.C. § 1255(i), based on his pre-2001 I-140 petitions. On January 25, 2013, USCIS issued a Notice of Intent to Deny ("NOID") Mr. Hsiao's I-485 application. CAR at 307-310. The NOID stated that Mr. Hsiao's 1998 and 2000 I-140 petitions were not "approvable when filed" because they were "denied by the Service." CAR at 308-309. Mr. Hsiao responded with additional evidence and legal arguments disagreeing with USCIS's conclusion that the denial of the petitions caused the petitions to not be "approvable when filed." However, USCIS denied his application on February 28, 2013. USCIS stated in relevant part:

> [Y]ou assert that the two I-140 petitions . . . filed by you prior to April 30, 2001 qualify you under 245(i). You go on to state that the denial of the petitions does not mean that they were not approvable when filed. To support your assertions, you reference the court case Ogundipe v. Mukasey, 541 F.3d 257 (4th Cir. 2008). However, a court case from the United States Court of Appeals for the Fourth Circuit is not binding on the Service in these proceedings. Moreover, it has not been establish[ed] that the facts and circumstances of this case are analogous to the facts and circumstances of the immediate case.
>
> You also reference 8 CFR Section 254.10(a)(3) which discusses the meaning of approvable when filed. You assert that your initial I-140 petition meets all three requirements for being approvable when filed which includes (1) properly filed, (2) meritorious in fact, and (3) not frivolous. The fact remains that both of the I-140's referenced above were denied for cause and were not approved. The Service maintains that these petitions were not approvable when filed; and thus do not satisfy the requirements under 8 CFR Section 245.10(a)(3).

CAR at 306. USCIS concluded that, because "the evidence of record fails to establish you are a grandfathered alien or are otherwise eligible or [§ 1255(i)] benefits . . . you are ineligible to adjust under [§ 1255], and this application is hereby denied." *Id.* Mr. Hsiao administratively

appealed USCIS's decision, but the agency affirmed the denial on April 29, 2013. CAR at 285-286.

On August 5, 2013, Mr. Hsiao filed a second I-485 application, again claiming eligibility to adjust his status under 8 U.S.C. § 1255(i). CAR at 226-283. On October 1, USCIS issued another NOID. CAR at 222-225. Mr. Hsiao again responded with additional information. On November 25, USCIS again denied his application, stating,

> It appears that you are claiming eligibility to adjust under [§ 1255(i)] as a grandfathered alien. Review of the records show that you have provided an I-797 receipt notice which pertains to the filing of Form I-140 . . . that was filed on your behalf on July 6, 1998. However, this petition was denied by the Service on May 7, 1999. Therefore, the Service does not find that this petition was approvable when filed.

CAR at 3.

## C. Procedural History

Mr. Hsiao filed this lawsuit on May 9, 2014, alleging that USCIS's denials of his I-485 applications violated the Administrative Procedure Act ("APA"). *See* Compl. (Dkt. 1). The instant cross Motions for Summary Judgment were filed on January 20, 2015 (Dkts. 24, 25). Oppositions were filed on February 17 (Dkts. 34, 35) and replies on March 2 (Dkts. 37, 38). At the Court's request, additional briefing was filed on March 20 (Dkts. 41, 42). Oral arguments were held on April 3 (Dkt. 44).

## II. Standard of Review Under the APA

The review of a final agency action is governed by the APA under an "arbitrary and capricious" standard. 5 U.S.C. § 706(2)(A); *Idaho Farm Bureau Fed'n v. Babbit*, 58 F.3d 1392, 1401 (9th Cir. 1995). In short, an agency's decision should be overturned if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* In evaluating whether an agency's decision meets this standard, "[courts] ask whether the agency 'considered the relevant factors and articulated a rational connection between the facts found and the choice made.'" *Natural Res. Def. Council v. U.S. Dep't of the Interior*, 113 F.3d 1121,

124 (9th Cir. 1997) (quoting *Pyramid Lake Pauite Tribe of Indians v. U.S. Dep't of the Navy*, 898 F.2d 1410, 1414 (9th Cir. 1990)). The standard is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Indep. Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000).

Under the APA, the district court's review is usually limited to the administrative record. 5 U.S.C. § 706; *see also Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999) (when reviewing final agency action, the district court is not managing a "garden variety civil suit," but rather "sits as an appellate tribunal"). The usual "genuine dispute of material fact" standard for summary judgment does not apply in an APA case. Rather, summary judgment functions as a mechanism for determining as a matter of law whether the administrative record supported the agency's decision and whether the agency complied with the APA. *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985).

## III.   Discussion

The key issue before the Court is whether USCIS applied the correct legal standard when it denied Mr. Hsiao's I-485 applications on the ground that his 1998 and 2000 I-140 petitions were not "approvable when filed." Because there is no disagreement that the 1998 and 2000 petitions were properly filed and non-frivolous, the specific issues are whether the petitions were "meritorious in fact . . . based on the circumstances that existed at the time" the petitions were filed, 8 C.F.R. § 245.10(a)(3), and whether USCIS must consider additional evidence provided by Mr. Hsiao, evidence which the INS did not have before it in 1998 and 2000, in order to make that determination.

Plaintiff contends that USCIS followed the wrong legal standard for determining when a petition is "meritorious in fact" because the agency relied on the bare fact that the 1998 and 2001 I-140 petitions were denied to conclude that those petitions were not "meritorious in fact." Defendants argue that USCIS did not err because (1) USCIS did in fact consider Mr. Hsiao's additional evidence and still found Mr. Hsiao's claim that his pre-2001 petitions were "approvable when filed" unsupported by the record; and (2) INS's denials of the 1998 and 2000 petitions on their merits are sufficient to establish that the petitions were not "meritorious in

1    fact" because the denials were not based on circumstances analogous to those outlined in 8

2    C.F.R. §§ 205.1(a)(3)(i) and (ii).

3         Based on the record, the Court cannot determine with certainty whether USCIS did in

4    fact consider Mr. Hsiao's additional evidence or whether USCIS was relying exclusively on the

5    fact that INS had previously denied Mr. Hsiao's 1998 and 2000 I-140 petitions. The language of

6    the NOID from the first I-485 application and the language of the second I-485 denial suggest

7    that the fact of the INS denials weighed heavily in USCIS's decisions. Thus, the Court assumes

8    for the purposes of the following discussion that USCIS relied exclusively or almost exclusively

9    on the mere fact of the INS's denials in determining that Mr. Hsiao's pre-2001 petitions were

10   not "meritorious in fact."

11        To determine whether this was legal error, the Court turns to the text of the relevant

12   regulation, 8 C.F.R. § 245.10(a)(3), and case law interpreting that regulation. The regulation

13   allows for visa petitions that were "approvable when filed, but . . . later withdrawn, denied, or

14   revoked due to circumstances that have arisen after the time of filing" to preserve a beneficiary's

15   grandfathered status. *Id.* The regulation defines "circumstances that have arisen after the time of

16   filing" as "circumstances similar to those outlined in [8 C.F.R. §§ 205.1(a)(3)(i) or (ii)]." *Id.*

17   These examples include the petitioner's withdrawal of the petition, the death of the beneficiary

18   or petitioner, failure to pay the filing fee, or changes in family relationships (for family-based

19   petitions). *See* 8 C.F.R. §§ 205.1(a)(3)(i), (ii).

20        Three recent cases, a Fourth Circuit and two BIA cases, have interpreted this regulation.

21   In *Ogundipe v. Mukasey*, 541 F.3d 257, 258 (4th Cir. 2008), Ogundipe appealed a denial of his

22   application to adjust status. Similar to Mr. Hsiao, Ogundipe was unlawfully present, but argued

23   that he qualified for adjustment of status under § 1255(i) based on a visa petition that was filed

24   in 1997 that INS later denied. In Ogundipe's case, a church had filed a petition for a "special

25   immigrant" visa for him. INS issued an RFE, the church failed to respond, and the INS denied

26   the petition. Similar to Mr. Hsiao, Ogundipe was subsequently approved for a "special

27   immigrant" visa in 2002 after another church petitioned for it on his behalf. In 2004, Ogundipe

28   filed an I-485 to adjust to lawful permanent resident status after the INS initiated removal

proceedings against him for overstaying his visa. The immigration judge ("IJ") rejected Ogundipe's argument that he was grandfathered under § 1255(i) on the ground that, although INS's denial of the 1997 petition alone was not enough to establish that the petition was *not* "approvable when filed," the numerous evidentiary deficiencies in the petition, which the church never remedied despite the INS's RFE, established that the 1997 petition was not meritorious in fact. The BIA affirmed.

The Fourth Circuit agreed with the principle that "the determination of whether a visa petition is approvable when filed is not limited to the question of whether the petition was actually approved" because "meritorious" means "meriting a legal victory" or "having legal worth," even if there ultimately is no actual legal success. *Id.* at 260. Citing the language of 8 C.F.R. § 1245.10(a)(3) and the BIA's decision in *Matter of Riero*, 24 I&N Dec. 267 (BIA 2007), the Fourth Circuit held that a visa petition is "meritorious in fact" "if, based on the circumstances that existed at the time the petition was filed, the beneficiary of the petition qualified for the requested classification. An alien seeking to adjust his status may prove that a previously denied visa application was meritorious in fact by making an appropriate factual showing in removal proceedings, subject to any applicable evidentiary and procedural rules." *Id.* at 261. Ultimately, the Fourth Circuit found that the evidence in the record failed to show that Ogundipe was eligible for a religious worker visa in 1997.

In *Matter of Riero*, Riero and Espinol, father and son, argued that they were grandfathered under § 1255(i) because Riero's first wife had filed a visa petition on his behalf on April 30, 2001. The INS denied the petition because INS doubted whether Riero and his first wife had a bona fide marriage. 24 I&N Dec. at 268-69. The IJ presiding over Riero's and Espinol's removal proceedings heard evidence outside the record of the 2001 petition regarding Riero's first marriage, but based on the record, the IJ ultimately concurred with the INS's conclusion that the marriage was not bona fide and thus ordered Riero and Espinol removed. On appeal, the BIA held that the denial of the petition, "although significant," was not dispositive as to whether the petition was "meritorious in fact." *Id.* at 269. The BIA approved of the IJ hearing evidence outside the record of Riero's first wife's petition. *Id.* Ultimately, however, the BIA

agreed with the IJ that Riero failed to meet his burden of proving the bona fides of his marriage to his first wife. *Id.* at 270.

In *Matter of Butt*, 26 I.&N. Dec. 108 (BIA 2013), Butt's employer filed a labor certification application for him on April 30, 2001. The relevant agency made two requests for additional information. The employer responded to the first request, but not to the second. It is unclear if the employer ultimately withdrew the application or if it was denied because of the employer's failure to respond; in any event, the application was never approved. In 2005, the employer filed a new labor certification, which was ultimately approved. Butt's I-140 petition was also approved. Butt's I-485 petition was denied, however. USCIS held that the 2001 labor certification application was not "approvable when filed," as it was denied as a result of his employer's failure to respond to a request for information. An IJ subsequently ordered Butt's removal for the same reason. *Id.* at 109-10. On appeal, the BIA reversed, holding that a labor certification application could be meritorious in fact despite not having been approved. *Id.* at 116-18. In doing so, it cited *Ogundipe* and *Matter of Riero* with approval and described its approach to determining when visa petitions are meritorious as follows:

> The approach that we have used, and with which the Second and Fourth Circuits agree, is appropriate in determining if a visa petition "merited a legal victory" upon filing. *Id.* In that context we have the ability to consider whether the visa petition would have been approved had it been adjudicated on the date it was filed, notwithstanding the fact that it may (1) remain unadjudicated at some future date or (2) have been denied, withdrawn, or revoked as a result of subsequent events (for example, a divorce between the alien and the petitioning spouse, the marriage of an unmarried alien child where the child's single status is critical to approval of the petition, or the closing of a petitioning business, which rendered it unable to offer the alien employee a job under the employment-based visa petition). *See* 8 C.F.R. §§ 245.10(a)(3)-(4), 1245.10(a)(3)-(4); *see also* 8 C.F.R. §§ 205.1(a)(3)(i)-(ii), 1205.1(a)(3)(i)-(ii) (2012).

*Id.* at 115.

As the parties agree, these cases all support the principle that the mere fact that a petition is ultimately denied by INS is not dispositive of whether the petition was "meritorious in fact" when filed. Also, as made clear by the BIA's approval of the IJ taking testimony on an issue

previously decided by INS in *Matter of Riero*, the agency considering the grandfathering issue is permitted to consider new evidence going to that issue.

The question in this case, however, is whether it matters why a petition was denied. If a petition was denied on its merits, as opposed to being denied for some procedural reason such as failure to respond to an RFE or because of a subsequent event such as a change in the beneficiary's relationship with the petitioner, is the agency required to consider new evidence going to the merits of the petition? Or, can the agency rely on the fact that the petition was denied on its merits to conclude that the petition was not "meritorious in fact" when filed? Plaintiff's position is that, regardless of why his 1998 and 2000 petitions were denied, Mr. Hsiao should be permitted to submit additional evidence and USCIS should be required to consider it. Although Defendants' main argument is that USCIS properly considered Plaintiff's new evidence, Defendants' implicit position is that, if the INS denies a petition on the merits, then the denial alone can establish that the petition was not "meritorious in fact." Defs.' Opp'n to Pl.'s Mot. for Summ. J. (Dkt. 36), at 3-4.

The Court agrees with Defendants. Defendants' reading is more faithful to the text of the regulation. The regulation allows visa petitions to be considered "approvable when filed" despite being denied if they were denied due to circumstances such as the petitioner's withdrawal of the petition, the death of the beneficiary or petitioner, failure to pay the filing fee, or changes in family relationships (for family-based petitions). *See* 8 C.F.R. §§ 205.1(a)(3)(i), (ii). *Ogundipe* and *Matter of Butt* added failure to respond to an RFE as one of those circumstances. Here, INS denied Mr. Hsiao's 1998 and 2000 petition because the information he provided, including information he provided in response to requests for additional evidence, was insufficient to qualify him for an EB-1 or EB-2 visa. The denials were not based on Mr. Hsiao's withdrawal of the petition, since he did not withdraw the petition. They were not based on his failure to respond to an RFE because he did respond to RFEs in both petitions. Nor was it based on any change in Mr. Hsiao's relationship with his employer, since he self-petitioned. Thus, Mr. Hsiao's petitions were not "denied . . . due to circumstances similar to" the examples in 8 C.F.R. §§ 205.1(a)(3)(i) and (ii).

In contrast, adopting Plaintiff's interpretation would require USCIS to re-adjudicate old petitions that were already adjudicated fifteen and seventeen years ago. As stated by the First Circuit when faced with a similar argument in favor of permitting re-litigation,

> In some ultimate objective sense (*sub species aeternitatis*), [Plaintiff] may have been [an "alien of extraordinary ability" or an "alien of exceptional ability"] even if all the evidence at the time pointed in the other direction; even the most affirmative finding to the contrary could, in light of new evidence, prove to have been mistaken. But there is no reason to think that the grandfathering provision was meant to give a second bite at the apple to one who earlier had a full and fair opportunity to prove that [he was an "alien of extraordinary ability" or an "alien of exceptional ability"].

*Echevarria v. Keisler*, 505 F.3d 16, 19-20 (1st Cir. 2007). In this case, having the Court require USCIS to re-examine the INS's decision regarding the 1998 and 2000 I-140 petitions would also be inconsistent with the six-year statute of limitations on APA claims. *See* 28 U.S.C. § 2401(a).

This holding is not meant to discourage USCIS from examining additional evidence to make a "meritorious in fact" determination if the agency finds it prudent to do so. Rather, the Court simply finds based on the specific facts of this case that there was no legal error when USCIS chose to rely heavily on a previous disposition on the merits in determining that Mr. Hsiao's 1998 and 2000 petitions were not "meritorious in fact."

**IV. Disposition**

For the reasons discussed above, the Court holds that USCIS did not apply an erroneous legal standard and did not violate the APA in denying Mr. Hsiao's I-485 applications. Thus, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment. The Clerk is directed to close this case.

DATED:     April 6, 2015

*David O. Carter*
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE